UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FAMILY ORCHARDS, LLC, a Delaware limited
liability company,

              Plaintiff,                  Case No: 1:22-cv-000943

v

                                    Hon. Paul L. Maloney

PENINSULA TOWNSHIP, a Michigan municipal
corporation,

              Defendant.

---

Andrew Blodgett (P68259)
PARKER HARVEY PLC
Attorneys for Plaintiff
901 South Garfield Ave, Suite 200
Traverse City, MI 49686
(231)929-4878
ablodgett@parkerharvey.com

---

**This case is related to *Wineries of the Old Mission Peninsula (WOMP) Association, et al., v. Peninsula Township*, Case No. 1:20-cv-1008-PLM-RSK, currently pending before the Honorable Paul L. Maloney.**

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiffs FAMILY ORCHARDS, LLC ("Family Orchards") by and through its attorneys Parker Harvey PLC, for its Second Amended Complaint against Defendant PENINSULA TOWNSHIP, state as follows:

1.      Family Orchards is a Delaware limited liability company.

2.      Peninsula Township is a Michigan municipal corporation located in Grand Traverse County, Michigan with its offices located at 13235 Center Road, Traverse City, MI 49686.

3.      At all times relevant to this action, Peninsula Township was acting under color of law.

4.      This action arises under the United States Constitution and 42 U.S.C. § 1983.

5.    The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6.    The Court has supplemental jurisdiction of Family Orchards' state law claim under 28 U.S.C. § 1367 because it forms part of the same case or controversy as the Constitutional claim.

**Factual Background on Family Orchards**

7.    Family Orchards owns parcels identified by tax IDs 11-115-036-03, 11-115-036-04, 11-115-036-05, 11-115-036-07, 11-115-038-55, and 11-115-041-00 (collectively, the "Family Orchards Property") in Peninsula Township.

8.    The Family Orchards Property is zoned as Agricultural under the Peninsula Township Zoning Ordinance ("PTZO").

9.    Collectively, the Family Orchards Property comprises 85.57 acres.

10.    The Family Orchards Property is contiguous.

11.    Family Orchards acquired the Family Orchards Property so it could operate a Winery Chateau under § 8.7.3(10) of the PTZO.

12.    A Winery Chateau is a special use under the PTZO and requires the Township Board to issue a special use permit.

13.    The Family Orchards Property meets all the lawful requirements to become a Winery Chateau under § 8.7.3(10).

14.    Family Orchards has taken substantial steps towards operating a Winery Chateau on the Family Orchards Property.  For years the property has been operated as a vineyard and orchard, including 32.6 acres planted with cherry trees, 4.4 acres planted with apple trees and 6.2 acres planted with Riesling grape vines.  These grapes have been historically processed into wine.

15.    The property also consists of a house and three barns.  These buildings are suitable for use as a winery tasting room, for producing wine and for storing wine/farm equipment.

16.    Recently, Family Orchard commenced the following substantial steps:

(a)    Engaging and paying a land use engineering and consulting firm to draft and finalize a special use permit application which was submitted to Peninsula Township;

(b)    Engaging and paying a soil and farming consultant who conducted comprehensive soil and analysis;

(c)    Engaging and paying a business consultant who conducted feasibility and land use planning analyses;

(d)    Undertaking and paying for a land survey;

(e)    Undertaking and paying for a site plan; and

(f)    Undertaking and paying for a soil testing.

17.    Family Orchards intends to apply for a Small Wine Maker license under Mich. Comp. Laws § 436.1111(12).

**Special Use Permit Procedures in Peninsula Township**

18.    An application for a special use permit "shall be submitted through the Zoning Administrator on a special form for that purpose."  PTZO, § 8.1.2(1).

19.    The application "shall be accompanied by

(a) The special form supplied by the Township Zoning Administrator filled out in full by the applicant, including a statement of supporting evidence showing compliance with the requirements of Section 8.1.3.

(b) Site plan, plot plan, development plan, drawn to scale (preferable 1"=50'), of total property involved showing the location of all abutting streets, the location of all existing and proposed structures and their uses, and the location and extent of all above ground development, both existing and proposed.

(c) Preliminary plans and specifications of the proposed development."

PTZO, § 8.1.2(2).

20.    Once received by the Zoning Administrator, the application and data "**shall be transmitted** to the Township Board for consideration after referral to a study by the Planning Commission."  PTZO, § 8.1.2(3)(a) (emphasis added).

3

21.    "The Town Board **shall review** each application for the purpose of determining that each proposed use meets the following standards, and in addition, **shall find adequate evidence** that each use on the proposed location will:

(a) Be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such a use will not change the essential character of the area in which it is proposed.

(b) Not be hazardous or disturbing to existing or future uses in the same general vicinity and will be a substantial improvement to property in the immediate vicinity and to the community as a whole.

(c) Be served adequately by essential facilities and services, such as highways, streets, police, fire protection, drainage structures, refuse disposal, water and sewage facilities, or schools.

(d) Not create excessive additional requirements at public cost for public facilities and services.

(e) Not involve uses, activities, processes, materials, and equipment or conditions of operation that will be detrimental to any persons, property, or the general welfare by fumes, glare or odors."

PTZO, § 8.1.3(1) (emphasis added).

22.    "In reviewing an impact assessment and site plan, the Town Board and the Planning Commission **shall consider**," among other things, "[t]hat the applicant may legally apply for site plan review." PTZO, § 8.1.3(3)(a) (emphasis added).

### Township Wineries Sued Peninsula Township

23.    More than two years ago, the eleven existing wineries in Peninsula Township sued Peninsula Township, alleging that its existing zoning ordinance violated the United States Constitution, was preempted by the Michigan Liquor Control Code, and violated the Michigan Zoning Enabling Act. *See Wineries of Old Mission Peninsula, et al., v. Peninsula Township*, Case No. 1:20-cv-1008-PLM-RSK, currently pending before the Honorable Paul L. Maloney.

24.     Peninsula Township has defended Case No. 1:20-cv-1008-PLM-RSK and maintains that its existing zoning ordinance is constitutional and complies with Michigan law.

**The Township Board Issues the First Moratorium**

25.     Due to the ongoing litigation in Case No. 1:20-cv-1008-PLM-RSK, the Township Board began a concerted effort to retaliate against existing and planned wineries in Peninsula Township.

26.     On January 3, 2022, the Peninsula Township Board held a special meeting at which it passed a Resolution No. 01-03-2022 #1, which was styled as a "resolution for moratorium on special use permits and amended special use permits in the agricultural district."  (**Exhibit 1: Agenda for January 3, 2022 Minutes**.)

27.     Resolution No. 01-03-2022 #1 stated that "[a] moratorium is imposed upon the consideration of any special use permits and amendments to special use permits in the agricultural district for a period of 180 days or until an amendment to agricultural district of the zoning ordinance is adopted, whichever occurs first."  (**Exhibit 2: Resolution No. 01-03-2022 #1, § 2**.)

28.     Resolution No. 01-03-2022 #1 barred existing Winery Chateaus and Remote Winery Tasting Rooms in Peninsula Township from amending their SUPs.

29.     Resolution No. 01-03-2022 #1 also barred the creation of new Winery Chateaus or Remote Winery Tasting Rooms.

30.     Existing and prospective wineries were the only entities affected by Resolution No. 01-03-2022 #1.

31.     Notice of Resolution No. 01-03-2022 #1 was not published in the *Traverse City Record Eagle* or other newspaper before the Township Board considered it, and therefore it did

not meet all requirements to have the force and effect of law under the Michigan Zoning Enabling Act.

32.     Resolution No. 01-03-2022 #1 was not passed as an ordinance and therefore lacked the force to suspend existing portions of the Peninsula Township Zoning Ordinance.

33.     The Michigan Court of Appeals has explained: "An ordinance … cannot be amended, repealed, or suspended by another act by a council of less dignity than the ordinance … itself." *McCarthy v. Vill. of Marcellus*, 189 N.W.2d 80, 85 (Mich. Ct. App. 1971).

34.     Despite failing to provide notice of Resolution No. 01-03-2022 #1 prior to its discussion at the Township Board's special meeting on January 3, 2022, and despite the resolution lacking the force to suspend the Peninsula Township Zoning Ordinance, Peninsula Township treated Resolution No. 01-03-2022 #1 as effective.

## Family Orchards Submits an Application for a Winery Chateau

35.     On April 12, 2022, Family Orchards submitted an application for a special use permit to the Peninsula Township Director of Zoning, Christina Deeren, and the Peninsula Township Planner, Jennifer Cram.

36.     Deeren and Cram refused to accept Family Orchards' application because of the moratorium purportedly imposed by Resolution No. 01-03-2022 #1.

37.     Family Orchards' application was not "transmitted to the Township Board for consideration after referral to a study by the Planning Commission," as required by PTZO, § 8.1.2(3)(a).

38.     The Township Board did not review Family Orchards' application and did not "find adequate evidence" as required by PTZO, § 8.1.3(1).

39.     Family Orchards never received a hearing or decision on its application submitted on April 12, 2022.

### The Township Board Issues the Second Moratorium

40.     On June 3, 2022, District Court Judge Maloney issued an Opinion Regarding Summary Judgment Motions in Case No. 1:20-cv-1008-PLM-RSK.

41.     In the opinion, District Court Judge Maloney declared multiple sections of the PTZO relating to Winery Chateaus to be unconstitutional or contrary to law.

42.     In response to District Court Judge Maloney's opinion, on June 14, 2022, the Township Board passed Ordinance 2022-06-14, which states "This Ordinance 2022-06-14 is hereby enacted to protect the public peace, health, safety, and welfare of the residents of Peninsula Township by establishing a moratorium on the consideration, approval, location, erection, construction, installation, or commencement of any new or expanded farm processing facility under Sec. 6.7.2(19) or any new or expanded use permitted by special use permit in the A-1 Agricultural District under Sec. 6.7.3 of the Peninsula Township Zoning Ordinance through January 1, 2023, and during the time necessary for Peninsula Township to review and amend the zoning regulations within the A-1 Agricultural District."  (**Exhibit 3: Ordinance 2022-06-14**.)

43.     Before passing a zoning ordinance or zoning ordinance amendment under the MZEA, a local unit of government like Peninsula Township "shall publish notice of the hearing in a newspaper of general circulation in the local unit of government not less than 15 days before the date of the hearing."  *See* Mich. Comp. Laws §§ 125.3103(1) and 125.3401.

44.     Peninsula Township did not publish notice of the public hearing on Ordinance 2022-06-14 in the *Traverse City Record Eagle* before the June 14, 2022 hearing.

45.    At the June 14, 2022, Peninsula Township residents voiced opposition to this underhanded attempt by the Township Board to pass an ordinance without public notice.  One resident stated: "First of all, the moratorium ordinance was not published to my knowledge in the *Record Eagle* giving everybody two weeks' notice. Best I can find out, at midnight the other night, we got notice that this moratorium was going to be discussed tonight." (**Exhibit 4: June 14, 2022 Meeting Minutes, at 7**.)  He continued: "You sort of breezed over the fact that you didn't give public notice of the SUP moratorium. I would hope that you would check with your attorneys and see if you were required to give that public notice because as far as I could find in the *Record Eagle*, I didn't see a public notice of it. If that is the case, then basically passing this ordinance was not up to the zoning enabling act, so I'll just leave it at that." (***Id.* at 17**.)

46.    Despite this failure under the MZEA, the Township Board unanimously passed Ordinance 2022-06-14.

47.    In enacting Ordinance 2022-06-14, Peninsula Township made clear that it was intending to target only wineries, and not other types of farms. Township Planner Jennifer Cram stated: "I want to respond to earlier comments to be very clear about the extension of the existing moratorium for special use permits and amendments to special permits in the A1 agricultural district. In regards to adding or expanding the moratorium to include use by right, that is only for farm processing facilities; it is specific to section 6.7.2 #19, so all other farming operations are still available. If a farmer wanted to construct a barn, you will still be able to do this. We are pausing the farm processing facility for six months. We are really striving to create parity in the zoning ordinance, and the existing zoning ordinance as a use by right for a farm processing facility is very specific to wineries. We need to change that so that it is an opportunity for all agricultural operations. Peninsula Township supports farming; I want to make that very clear." (***Id.* at 17**.)

48.    Peninsula Township published Ordinance 2022-06-14 in the *Traverse City Record Eagle* on June 16, 2022. (**Exhibit 5: Legal Notice**.)

49.    On June 21, 2022, a notice of intent to file a referendum petition against Ordinance 2022-06-14 under Mich. Comp. Laws § 125.3402 was filed with the Clerk of Peninsula Township.

50.    The Township Board acknowledged that it received the notice of intent.  (**Exhibit 6: July 12, 2022 Meeting Minutes, at 14**.)

51.    Under the Michigan Zoning Enabling Act, the notice of intent to file a referendum petition against Ordinance 2022-06-14 meant that Ordinance 2022-06-14 "shall not take effect until 1 of the following occurs:

(a) The expiration of 30 days after publication of the ordinance, if a petition is not filed within that time.

(b) If a petition is filed within 30 days after publication of the ordinance, the clerk of the legislative body determines that the petition is inadequate.

(c) If a petition is filed within 30 days after publication of the ordinance, the clerk of the legislative body determines that the petition is adequate and the ordinance or part of the ordinance is approved by a majority of the registered electors residing in the zoning jurisdiction voting on the petition at the next regular election or at any special election called for that purpose. The legislative body shall provide the manner of submitting the zoning ordinance or part of the zoning ordinance to the electors for their approval or rejection and determining the result of the election."

Mich. Comp. Laws § 125.3402(3).

52.    A petition was not filed within 30 days after publication of Ordinance 2022-06-14. Therefore, according to Mich. Comp. Laws § 125.3402(3)(a), Ordinance 2022-06-14 was not in effect until July 18, 2022.

### Peninsula Township Tries to Pass a More Restrictive Winery Ordinance

53.    Peninsula Township's revisions to its Zoning Ordinances had been in process since approximately 2015.  Notably, the revisions over those many years did not include changes to any of the winery-specific ordinances.

54.    For example, the May 17, 2021, version of the Township's ordinance rewrite did not contain any changes to the winery specific ordinances. (**Exhibit 7: May 17, 2021 Draft**).

55.    It was this version of the ordinance rewrite which the Township Board considered at its September 14, 2021 and October 12, 2021, meetings where it decided to table further discussion on passing this version of the ordinance until its November 2021 meeting.  (**Exhibit 8: Sept. 14, 2021 Minutes; Exhibit 9: Oct. 12, 2021 Minutes**).

56.    At the November 18, 2021, meeting, Peninsula Township considered a new version of its ordinance rewrite which was dated November 16, 2021.  (**Exhibit 10: Nov. 16, 2021 Draft**).

57.    This updated version of the ordinance rewrite did not contain any changes to the winery specific ordinances.  (**Exhibit 10**).

58.    A decision on this version of the ordinance rewrite was tabled until the December 14, 2021, meeting.  (**Exhibit 11: Nov. 18, 2021 Minutes, at 2-3**).

59.    At that December 14, 2021, meeting, the Township Board determined that it needed to clean up the ordinance rewrite.  It was noted that the rewrite process had been ongoing for "five to six years" and that "seventeen people have had their hands on the document to make changes."  (**Exhibit 12: Dec. 14, 2021 Minutes, at 2-3**).

60.    There were concerns over whether these changes were all disclosed to the public so the decision was made to send the proposed rewrite back to the Planning Commission so that all of the changes could be properly delineated and then "when it is available and ready, to post it on the website."  (***Id*. at 3**)

61.    Thereafter, at a March 14, 2022, joint meeting between the Township Board and Planning Commission, the Township Planner noted that she "stepped into a seven-year work in progress with the zoning ordinance rewrite."  (**Exhibit 13: March 14, 2022 Minutes, at 2**).

62.     She further detailed that she had created a comparison document between the original ordinance and the proposed rewrite.  (***Id.***)  Notably, the version of the ordinance rewrite which was contained in the meeting packet was the November 16, 2021 version, which did not contain any changes to the winery sections of the ordinances.  Planner Cram wrote a memorandum detailing the proposed changes to the November 16, 2021 version, and there was no proposal to remove the winery sections of the ordinances.  (**Exhibit 14: March 9, 2022 Memo**).

63.     At an April 18, 2022, Planning Commission meeting, the Township Planner provided the Planning Commission with a memorandum outlining the history of the zoning ordinance rewrite and the proposed changes.  (**Exhibit 15: April 13, 2022 Memo**).

64.     While the November 16, 2021, ordinance rewrite draft did not contain any changes to the winery sections, the Planner noted that as of April 13, 2022, it was recommended that one change be made to the Winery Chateau section related to the renting of vehicles:

Section 6.34 (P) – Winery-Chateaus (Page 6-32) Specific modifications include removing "or used on the property." at the end of the sentence.

*Id*.

65.     The Planner's memorandum did not mention any substantial changes to the Winery Chateau ordinance or that it would be rescinded altogether.  (***Id.***)

66.     This memorandum was updated on May 11, 2022, but the proposed changes to the Winery Chateau section did not change.  (**Exhibit 16: May 11, 2022 Memo**).

67.     On June 6, 2022, this Court issued its Summary Judgment Opinion in the Wineries of the Old Mission Peninsula case.  *See Wineries of Old Mission Peninsula, et al., v. Peninsula Township*, Case No. 1:20-cv-1008-PLM-RSK, ECF No. 162.

68.     Three days later, on June 9, 2022, the Township Board accepted the resignation of its attorney, Greg Meihn, and engaged new counsel, Fahey Schultz Burzych Rhodes.  (**Exhibit 17: June 9, 2022 Minutes, at 1**).

11

69.     At the same meeting, Township Supervisor Rob Manigold announced that he also was resigning. (***Id.***)

70.     Thereafter, at a June 20, 2022, Planning Commission meeting, the new supervisor stated that "the zoning ordinance rewrite adoption has been postponed most likely for a month" and that the Township needed to "figure out what we need to do to get the zoning ordinance rewrite passed that we have been working on for six years. Ideally, we will get that whole package pushed through and keep working on winery-related matters." (**Exhibit 18: June 20, 2022 Planning Commission Minutes, at 5**.)

71.     It was not until a July 26, 2022 joint meeting between the Township Board and the Planning Commission that the Planner and Township counsel introduced an ordinance rewrite which included eliminating the Winery Chateau classification and restricting the ability of wineries in Peninsula Township from operating. (**Exhibit 19: July 26, 2022 Minutes**).

72.     These revisions primarily dealt with the sections relating to the three existing classes of wineries in Peninsula Township. (**Exhibit 20: July 26, 2022 Proposed Ordinance Revision).**

73.     The July 26, 2022 special joint study session was the first time Peninsula Township proposed to entirely remove the Winery-Chateau classification and replace it with variations of farm processing facilities, which possess fewer rights.

74.     For example, parcel size and setback distances are significantly increased under the proposed revisions while retail space would be significantly reduced.

75.     Additionally, these revisions would limit or prohibit outdoor seating, reduce allowable hours of operation, restrict food sales, require all processing of produce to occur indoors, and prohibit events for profit, which are all currently allowed under § 8.7.3(10) of the PTZO.

12

76.     Peninsula Township also proposed to reinstate sections of the existing PTZO, like limitations on sources of produce, that District Court Judge Maloney declared unconstitutional in his June 3, 2022 opinion.

77.     However, discussion of this document was tabled.

78.     Peninsula Township was scheduled to hold an additional public hearing and vote to adopt the revisions at its August 9, 2022 meeting.  (**Exhibit 21: August 9, 2022 Amended Agenda**).

79.     After the Wineries of Old Mission Peninsula Association and District Court Judge Maloney independently questioned whether it was prudent or lawful to pass restrictions that have already been ruled unconstitutional, Peninsula Township's attorney William Fahey represented to District Court Judge Maloney at a hearing on August 8, 2022 that the amendments would not pass on August 9, 2022.

80.     At the August 9, 2022 Township Board meeting, the Planner informed the Township Board that "we are currently taking a pause on adopting the zoning ordinances."  (**Exhibit 22: August 9, 2022 Minutes, at 8**.)

81.     On August 15, 2022, the Planning Commission continued the pause and noted that a new subcommittee has been formed to compare the ordinances revisions to the prior ordinance.  (**Exhibit 23: August 15, 2022 Planning Commission Minutes, at 1**.)

### <u>Family Orchards Applies Again</u>

82.     In early July 2022, during the 30-day period where Ordinance 2022-06-14 was not in effect, Family Orchards re-submitted its application for a special use permit.

83.     On July 7, 2022, Planner Cram again rejected the application on the grounds that "the moratorium for SUP's in the A-1 Agricultural zone district was extended another 180 days."

84.     On July 12, 2022, a representative from Family Orchards, Walter Knysz, emailed Planner Cram "requesting that you reconsider your decision and, if you feel it necessary, I am requesting a hearing for a waiver to be granted for my wrongfully rejected SUP application as soon as possible.  I am not prepared to sit on my land indefinitely while the Township continues to fumble around this issue, as this is tantamount to a taking of my property rights."

85.     On July 14, 2022, Planner Cram responded, stating "If you wish to request a waiver of the moratorium, you may submit a letter addressed to the Township Board with supporting documentation as provided for in Sec 6 of the moratorium ordinance.  Your request will then be placed on an agenda for an upcoming regular meeting for discussion with the Township Board."

86.     On July 22, 2022, Knysz submitted a request on behalf of Family Orchards for waiver of the moratorium.  (**Exhibit 24: July 22, 2022 Request for Waiver**.)

87.     On July 28, 2022, Planner Cram responded, stating "I have updated our Clerk that a request for a waiver from the Moratorium has come in and we will include this on the August 9th Township Board agenda."

88.     Despite this assurance, on August 3, 2022, Planner Cram sent a letter to the Township Board recommending that Family Orchards' waiver request be removed from the August 9, 2022 agenda and rescheduled to the September 13, 2022 agenda.  (**Exhibit 25: August 3, 2022 Memorandum**.)

89.     Planner Cram did not notify Knysz about the removal from the August 9, 2022 agenda and Clerk Chown refused to include Family Orchards' waiver request in the packet for the August 9, 2022 meeting.

90.     Instead, Knysz had to email Planner Cram on August 8, 2022 to get clarification: "I was shocked to discover that you recommended to the Township Board to postpone the public

hearing for my request for waiver from the SUP moratorium, as indicated in your memo to the Board and recently revealed in the Board's Agenda packet online today.  This is after you had assured me on July 14 and last week that my public hearing request will be acted on at the Board's August 9 meeting!  I am also shocked that you did not include my request in the packet, but only your unilateral memo stating it should be tabled.  Please include the attached two letters in the Board's packet of materials and I expect to have a public hearing tomorrow."

91.    Cram responded on August 8, 2022: "Mr. Knysz, I did not receive your letter and request for a waiver until July 28th. As noted in my response on July 28th, I updated the Clerk and we added an item to the agenda for August 9th.  I did not note that this would be a public hearing. I apologize that I did not make this clear.  I should have followed up with you sooner."

92.    Knysz, understandably upset by this inconsistent messaging and bad faith by the Township, informed Planner Cram, Clerk Chown, Supervisor Isaiah Wunsch, Treasurer Marge Achorn, and Peninsula Township's attorney, William Fahey, that "Your latest attempt to try to deny me my due process rights is again legally flawed.  The Township moratorium ordinance does not call for a 'public' hearing or for any 15 day notice or publication requirement.  Rather, it states that I, as the petitioner, have a right to a hearing in front of the public and the Township Board. You surely know that this is not a 'public hearing' that needs to be noticed.  The Township's ordinances which require 'public hearings' clearly state that they are to be 'public hearings' and provide for notice.  Please correct your position to avoid legal consequences."

93.    The Township Board refused to consider the waiver request at the August 9, 2022 meeting, allowing Knysz to speak only during the public comment portion of the meeting.

94.    The Township Board unanimously voted to schedule the waiver request for a public hearing on September 13, 2022.  (**Exhibit 26: August 9, 2022 Meeting Minutes at 6–8**.)

95.     Before the public hearing on September 13, 2022, Planner Cram submitted another memorandum to the Township Board in which she changed positions again: "Township staff and legal counsel recommend that the Board conduct the public hearing on September 13, 2022, to receive any additional comments, arguments, or evidence that applicant wishes to present, as well as comments, arguments and evidence from other members of the public on the request.  Also, since this is the second request for a waiver of the moratorium the Board has received, we recommend that the Board defer action on the waiver request until the October 11, 2022 regular Township Board meeting.  This will allow the Board to give its fullest consideration to the presentations by the applicant and the public on the waiver request and for staff to make a recommendation on the request after the complete presentations by applicant and the public have been received.  As such, the Board should make a motion to Table the item to October 11, 2022." (**Exhibit 27: September 8, 2022 Cram Memorandum**).

96.     Planner Cram's letter was simply a pretext to delay a full hearing and decision on Family Orchards' application and force Family Orchards into the re-written and more restrictive winery designations contemplated by the Township.

97.     Family Orchards presented arguments that the two moratoria that the Township Board had passed were not legally valid.  No Trustees defended the legality of the moratoria.

98.     Speaking at the September 13, 2022 Township Board meeting, the Township's attorney agreed with Planner Cram and recommended that the Township Board table the motion until the October 11, 2022 meeting when the existing ordinance would be replaced with a newer, more restrictive ordinance.

99.     The Township's attorney callously disregarded the harm Family Orchards would suffer under the proposed new ordinance, even though the version of the proposed new ordinance to be considered at the October 11, 2022 meeting had not been made available to the public.

100.    The Township's attorney also acknowledged the legal issues with Ordinance 2022-06-14, saying "that might be one reason for delaying the decision on the waiver, is to adopt an ordinance that would clear up any uncertainty that anyone might have about whether your moratorium is legal or not."

101.    In other words, the Township Board arbitrarily refused to consider Family Orchards' multiple applications for a special use permit through a combination of illegal moratoria, constant delay, and changing requirements.

102.    Peninsula Township scheduled an additional public hearing on October 11, 2022 to consider the ordinance revisions again.

103.    On September 25, 2022, Peninsula Township published the proposed ordinance revisions in the *Traverse City Record Eagle*.  (**Exhibit 28: Legal Notice**).

104.    These proposed revisions would eliminate the Winery Chateau designation altogether and strip vested rights from existing Winery Chateaus in an attempt to force existing Winery-Chateaus into a more restrictive classifications under the new ordinance.  Peninsula Township's refusal to accept applications under the existing ordinance is part of this concerted effort to target and harm current and proposed wineries in Peninsula Township.

**Peninsula Township Improperly Denies the Waiver Request and Improperly Attempts to Pass a Moratorium**

105.    On October 11, 2022, Peninsula Township held a regular meeting of its Township Board and a special joint meeting with the Planning Commission.  (**Exhibit 29: Agenda of October 11, 2022 Meeting**).

106.   The October 11, 2022 meeting had three business items related to this lawsuit:

B.   Public Hearing on the Adoption of Zoning Ordinance Amendments Related to Farm Processing with Potential Board Action to Occur

C.   Public Hearing on Adoption of Zoning Ordinance for Temporary Moratorium with Potential Board Action to Occur

F.   Action on Family Orchards, LLC Waiver Request

107.   The October 11, 2022 meeting was the first time that Peninsula Township held a public hearing on the proposed revisions to the winery specific ordinances.

108.   "Regarding the adoption of Zoning Ordinance Amendments related to the Farm Processing Ordinances, the Planning Commission voted to recommend Amendment 201 to the Zoning Ordinance to the Township Board with recommendations seen this evening with a second by Alexander."  (**Exhibit 30: October 11, 2022 Meeting Minutes**).

109.   The Planning Commission did not make a summary of the comments received at the public hearing to deliver to the Township Board.

110.   The Planning Commission did not approve a motion containing specific language amending the Zoning Ordinance for the Township Board to consider, but merely referenced "the recommendations seen this evening."

111.   At the October 11, 2022, meeting, the Planning Commission approved a motion to recommend to the Township Board that it approve the temporary zoning moratorium.  (***Id.***).

112.   At the same meeting, the Township Board approved the adoption of Amendment #202, the Moratorium Amendment to the Zoning Ordinance, in effect until February 15, 2023. (**Exhibit 31: Amendment #202**.)

113.   Also on October 11, 2022, the Township Board finally took action on Family Orchards, LLC's waiver request.  (**Exhibit 30, at 28-31**.)  The Township Planner stated she was doing "the applicant justice by not allowing applications to come in" and that "it would have been

18

impossible for me, the Planner, to review an application and for the Planning Commission to make a recommendation based on the fact that we are in a lawsuit." (***Id.* at 28**).  The Planner later stated "if we had allowed an application to come in, based on Judge Maloney's decision, we wouldn't have known what to do with it."  (***Id.* at 29**).

114.    The Township Board denied the moratorium waiver request via the following motion:

> Sanger moved to deny the moratorium waiver request submitted by Family Orchards LLC for the following reasons: 1. The applicant has not stated any facts that would amount to irreparable harm if it waited until the moratorium period is over before submitting its application for a winery special use permit in the agricultural district, and the township board is not aware of any such facts. 2. The township has been actively working on comprehensive revisions to the zoning ordinance, including the provisions governing winery uses, since before the applicant first attempted to establish a winery. 3. The township has had one version or another of a moratorium in place since before the applicant first attempted to establish a winery. 4. The township has produced several successive drafts of revised zoning ordinance provisions governing wineries in the last several months, and the planning commission conducted a public hearing on the current proposed draft amendments this evening. 5. It is likely that by the time the review process has been completed on an application for a new winery that the township's zoning ordinance provisions governing wineries will be substantially different that the current zoning ordinance provides. It would be wasteful both for the applicant and the township to devote substantial time to review of an application until the ongoing ordinance amendment procedures have been concluded. 6. The applicant will have a reasonable opportunity to submit an application to establish a winery after the current ordinance amendment process is concluded with a second by Shanafelt. (***Id.* at 30-31).**

115.    On December 8, 2022, the Township Board went into closed session to "consult with the township attorney regarding trial strategy in the winery lawsuit and the Family Orchards lawsuit pursuant to MCL 15.268(1)(e)."  (**Exhibit 32: Dec. 8, 2022 Minutes**).

116.    The very next week, on December 13, 2022, the Township Board unanimously passed Amendment #201.  (**Exhibit 33: Amendment #201**).

117.    The Township Board passed Amendment #201 to manufacture a defense to this lawsuit.

118.    As a result of Peninsula Township's actions, Family Orchard has suffered damages.

**COUNT I – PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)**

119.    Family Orchards incorporates the preceding paragraphs as though fully restated herein.

120.    The Fourteenth Amendment to the United States Constitution states, in relevant part, that "nor shall any State deprive any person of life, liberty, or property, without due process of law."

121.    As a subdivision of the State of Michigan, Peninsula Township must provide due process of law to persons within its jurisdiction.

122.    Family Orchards owns the Family Orchards Property located in Peninsula Township.

123.    Family Orchards has a right to petition Peninsula Township for a special use permit to develop the Family Orchards Property under § 8.7.3(10) of the PTZO.

124.    Peninsula Township deprived Family Orchards of the right to petition for a special use permit when it refused, on multiple occasions, to accept Family Orchards' application under the guise of two unlawful moratoria.

125.    Resolution No. 01-03-2022 #1 and Ordinance 2022-06-14, which impose a moratorium on the issuance or amendment to special use permit zoning applications for wineries in the A-1 Agricultural District, constituted a suspension or amendment of the Peninsula Township Zoning Ordinance.

126.    The Zoning Enabling Act states: "Amendments or supplements to the zoning ordinance shall be adopted in the same manner as provided under this act for the adoption of the original ordinance."  Mich. Comp. Laws § 125.3202(1).

127.    Notice of Resolution No. 01-03-2022 #1 was not published in the Traverse City Record Eagle or other newspaper before the Township Board considered it, and therefore did not meet all requirements to have the force and effect of law under the Michigan Zoning Enabling Act.

128.    Peninsula Township did not publish notice of the public hearing on Ordinance 2022-06-14 in the *Record Eagle* not less than 15 days before the June 14, 2022 hearing, as required by Mich. Comp. Laws §§ 125.3103(1) and 125.3401.

129.    Accordingly, Resolution No. 01-03-2022 #1 and Ordinance 2022-06-14 were unlawful and Peninsula Township's reliance upon them was made in bad faith.

130.    Peninsula Township's refusal to accept or consider Family Orchards' application was done in contravention of multiple provisions of the PTZO that require consideration of the application, including § 8.1.2(3)(a) ("the application and data "**shall be transmitted** to the Township Board for consideration after referral to a study by the Planning Commission"); § 8.1.3(1) ("The Town Board **shall review** each application" and "**shall find adequate evidence**"); § 8.1.3(3)(a) ("In reviewing an impact assessment and site plan, the Town Board and the Planning Commission **shall consider**," among other things, "[t]hat the applicant may legally apply for site plan review.").

131.    Peninsula Township deprived Family Orchards of the right to a hearing on its application for a special use permit when it refused, on multiple occasions, to accept Family Orchards' application and arbitrarily hid behind two unlawful moratoria to avoid discussing the application on the merits as required by the PTZO.

21

132.    Peninsula Township deprived Family Orchards of its procedural due process rights when it refused to make a decision on Family Orchards' application for at least six months and instead tabled the decision until a lawfully enacted moratorium could be imposed to again deprive Family Orchards of any certainty with respect to its application.

133.    Peninsula Township's refusal to consider Family Orchards' application was arbitrary, capricious, and unreasonable.

134.    Peninsula Township's refusal to consider Family Orchards' application was done in bad faith.

135.    Peninsula Township's actions have deprived Family Orchards of the right to either develop its property or to appeal the denial of its application to the Zoning Board of Appeals.

136.    Family Orchard had a vested right to develop its property under the Winery Chateau ordinance.

137.    Peninsula Township passed Amendment #201 for the specific purpose of manufacturing a defense to this lawsuit.

138.    Peninsula Township's actions are further designed to harm Family Orchards by forcing it to apply under Amendment #201 to the PTZO that contains fewer rights than allowed under the Winery Chateau designation in § 8.7.3(10).

WHEREFORE, Family Orchards requests that the Court enter an order (1) compelling Peninsula Township to accept Family Orchards' application for a special use permit under Winery Chateau version of § 8.7.3(10) of the PTZO, hold a public hearing on the application, and issue a final decision on the application under the Winery Chateau standards previously set forth in § 8.7.3(10); (2) awarding Family Orchards its damages incurred as well as its attorney's fees and

costs under 42 U.S.C. § 1988; and (3) awarding Family Orchards any other relief the Court deems necessary and appropriate.

## COUNT II – EQUAL PROTECTION (42 U.S.C. § 1983)

139.    Family Orchards incorporates the preceding paragraphs as though fully restated herein.

140.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

141.    The Equal Protection Clause applies to Peninsula Township.

142.    Existing and prospective wineries are a classification of agricultural special uses within Peninsula Township.

143.    Through the imposition of Resolution No. 01-03-2022 #1 and Ordinance 2022-06-14, the Township treated existing and prospective wineries different than other special uses within Peninsula Township by preventing existing and prospective wineries from amending or applying for special use permits.

144.    The Township's disparate treatment of existing and prospective wineries was done in retaliation for *Wineries of Old Mission Peninsula, et al., v. Peninsula Township*, Case No. 1:20-cv-1008-PLM-RSK.

145.    The Township used unlawful means, including two illegal moratoria imposed by Resolution No. 01-03-2022 #1 and Ordinance 2022-06-14, constant delay of consideration of waiver requests from the illegal moratoria, and the illegal passage of Amendment #201, to reduce the rights of existing and proposed wineries within Peninsula Township.

146.    The Township's discrimination was unreasonable and did not serve any legitimate

governmental interest other than retaliation.

147.    Family Orchards has suffered damage as a result of Peninsula Township's actions.

WHEREFORE, Family Orchards requests that the Court enter an order (1) compelling

Peninsula Township to accept Family Orchards' application for a special use permit under Winery

Chateau version of § 8.7.3(10) of the PTZO, hold a public hearing on the application, and issue a

final decision on the application under the Winery Chateau standards previously set forth in §

8.7.3(10); (2) awarding Family Orchards its damages incurred as well its attorney's fees and costs

under 42 U.S.C. § 1988; and (3) awarding Family Orchards any other relief the Court deems

necessary and appropriate.  In the alternative, Family Orchards requests that the Court enter an

order declaring Amendment #201 unconstitutional.

**COUNT III – VIOLATION OF THE MICHIGAN ZONING ENABLING ACT**

148.    Family Orchards incorporates the preceding paragraphs as though fully restated

herein.

149.    Family Orchards brings this claim in the alternative in the event this Court

concludes that Amendment #201 is effective such that Family Orchards must apply under it.

150.    The Michigan Zoning Enabling Act sets forth the procedures Peninsula Township

must follow when it amends its zoning ordinance.

151.    Peninsula Township's Planning Commission must hold a public hearing before

submitting recommendations for a proposed zoning ordinance to the Peninsula Township Board.

*See* Mich. Comp. Laws § 125.3306.

152.    "Following the required public hearing under section 306, the zoning commission

shall transmit a summary of comments received at the hearing and its proposed zoning ordinance,

including any zoning maps and recommendations, to the legislative body of the local unit of government."  Mich. Comp. Laws § 125.3308(1)

153.    Before Amendment #201 was passed, the Planning Commission did not transmit a summary of comments received at the October 11, 2022 hearing as required by Mich. Comp. Laws § 125.3308(1).

154.    Because Peninsula Township did not strictly follow the procedures of the Michigan Zoning Enabling Act, Amendment #201 is invalid.  *Korash v. City of Livonia*, 388 Mich. 737, 746, 202 N.W.2d 803, 807 (1972) ("Indeed, this Court has consistently held that the procedures outlined in the Zoning Enabling Act must be strictly adhered to.  The statute spells out a certain procedure that must be followed to enact a zoning ordinance; this procedure admittedly was not followed by the city in this case; and therefore the ordinance in question is invalid."  (internal citations omitted)).

WHEREFORE, Family Orchards requests that the Court enter an order (1) declaring Amendment #201 as unlawful and unenforceable (2) awarding Family Orchards its damages incurred as well its attorney's fees and costs under 42 U.S.C. § 1988; and (3) awarding Family Orchards any other relief the Court deems necessary and appropriate.

### COUNT IV – DORMANT COMMERCE CLAUSE (42 U.S.C. § 1983)

155.    Family Orchards incorporates the preceding paragraphs as though fully restated herein.

156.    Family Orchards brings this claim in the alternative in the event this Court concludes that Amendment #201 is effective such that Family Orchards must apply under it.

157.    Amendment #201 discriminates against interstate commerce in violation of the Commerce Clause, Article I, § 8, Clause 3, of the United States Constitution, by favoring and mandating in-Township product over out-of-Township products.

158.    It is common practice in the wine industry to purchase grapes, juice, and/or shiners from out-of-state markets like California, Washington, and Oregon for further processing by a winery.

159.    Sections 6.7.2(19)(a), 6.7.2(19)(b)(2), 8.7.3(10)(a), 8.7.3(10)(b)(2), 8.7.3(11)(a), and 8.7.3(11)(b)(2) facially discriminate against interstate commerce by imposing limits on the amount of raw produce, including grapes, that can be imported into Peninsula Township for processing.

160.    Sections 6.7.2(19)(a), 6.7.2(19)(b)(2), 8.7.3(10)(a), 8.7.3(10)(b)(2), 8.7.3(11)(a), and 8.7.3(11)(b)(2) have the facially discriminatory purpose of limiting interstate commerce by limiting processing to "Raw Produce" when wineries frequently import juice or shiners for processing.

161.    Sections 6.7.2(19)(a), 6.7.2(19)(b)(2), 8.7.3(10)(a), 8.7.3(10)(b)(2), 8.7.3(11)(a), and 8.7.3(11)(b)(2) are designed to further the illegitimate purpose of protecting Peninsula Township farmers and their produce at the expense of non-Township farmers and produce.

162.    Sections 6.7.2(19)(a), 8.7.3(10)(a), and 8.7.3(11)(a) confirm this illegitimate purpose as they state that "It is the intent of this Subsection to promote a thriving local agricultural production industry[.]"

WHEREFORE, Family Orchards requests that the Court enter an order (1) declaring Sections 6.7.2(19)(a), 6.7.2(19)(b)(2), 8.7.3(10)(a), 8.7.3(10)(b)(2), 8.7.3(11)(a), and 8.7.3(11)(b)(2) of Amendment #201 as unlawful and unenforceable; (2) awarding Family Orchards

its damages incurred as well its attorney's fees and costs under 42 U.S.C. § 1988; and (3) awarding Family Orchards any other relief the Court deems necessary and appropriate.

### COUNT V – PREEMPTION UNDER MICHIGAN LIQUOR CONTROL CODE

163.    Family Orchards incorporates the preceding paragraphs as though fully restated herein.

164.    Family Orchards brings this claim in the alternative in the event this Court concludes that Amendment #201 is effective such that Family Orchards must apply under it.

165.    The Michigan Liquor Control Code allows on-premises licensees to sell alcohol between the hours of 7:00 a.m. and 2:00 a.m.  *See, e.g.*, Mich. Admin. Code R. 436.1403 ("Except as provided in subrule (7) of this rule, an on-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day nor between the hours of 2 a.m. and 12 noon on Sunday and shall not sell, give away, or furnish spirits between the hours of 2 a.m. and 12 midnight on Sunday, unless issued a Sunday sales permit by the commission which allows the licensee to sell spirits on Sunday between the hours of 12 noon and 12 midnight."); Mich. Comp. Laws § 436.2111("The sale of beer and wine between the hours of 7 a.m. on Sunday and 2 a.m. on Monday is allowed."); Mich. Comp. Laws § 436.2114(1) ("Notwithstanding R 436.1403 and R 436.1503 of the Michigan administrative code and except as otherwise provided under this act or rule of the commission, an on-premises and an off-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2 a.m. and 7 a.m. on any day.").

166.    Sections 8.7.3(10)(b)(1)(vi) and 8.7.3(11)(b)(1)(vi) of Amendment #201 state "The hours of operation for retail sales, including a Tasting Room [and approved outdoor seating], shall be limited to an opening time no earlier than 9:00 a.m. and a closing time no later than 9:30 p.m."

167.    Sections 8.7.3(10)(b)(1)(vi) and 8.7.3(11)(b)(1)(vi) conflict with, and are preempted by, Mich. Admin. Code R. 436.1403, Mich. Comp. Laws § 436.2111, and Mich. Comp. Laws § 436.2114(1).

168.    The Michigan Liquor Control Code defines "manufacture" as "to distill, rectify, ferment, brew, make, produce, filter, mix, concoct, process, or blend an alcoholic liquor or to complete a portion of 1 or more of these activities."  Mich. Comp. Laws § 436.1109(1).

169.    The Michigan Liquor Control Code defines "wine" as "a product manufactured by the normal alcoholic fermentation of the juice of sound, ripe grapes, or any other fruit with the usual cellar treatment, and containing not more than 21% of alcohol by volume, including cider made from apples or pears, or both, that contains at least 1/2 of 1% of alcohol by volume, or mead or honey wine made from honey, fermented fruit juices other than grapes, and mixed wine drinks. Mich. Comp. Laws § 436.1113(9).

170.    Sections 6.7.2(19)(b)(2)(i). 8.7.3(10)(b)(2), and 8.7.3(11)(b)(2) limit "processing"—i.e., wine making—to "Raw Produce of the same species of Farm Products as are raised by the Farm Operating on the parcel on which the [Wholesale/Retail] Farm Processing Facility is located.  For example, an apple may be processed into apple juice or applesauce."

171.    Regulation of manufacturing wine is within the exclusive province of the Michigan Liquor Control Commission, and Peninsula Township has no authority to regulate the processes or ingredients used.

172.    Sections 6.7.2(19)(b)(2)(i). 8.7.3(10)(b)(2), and 8.7.3(11)(b)(2) conflict with, and are preempted by, the Michigan Liquor Control Code, including Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1113(9), because they attempt to regulate the processes and ingredients a winery may use to manufacture wine.

173.    The Michigan Liquor Control Code allows the Michigan Liquor Control Commission to issue a catering permit to on-premises licensees.  *See* Mich. Comp. Laws § 436.1547(3) ("The commission may issue a catering permit to a specially designated distributor, specially designated merchant, or public on-premises licensee, as a supplement to that license, to allow the sale and delivery of beer, wine, or spirits in the original sealed container at locations other than the licensed premises and to require the catering permit holder to serve beer, wine, or spirits at the private event where the alcoholic liquor is not resold to guests.").

174.    The Michigan Liquor Control Code allows on-premises licensees like wineries to operate restaurants.  *See* Mich. Comp. Laws § 436.1536(7)(h) ("A brewer, micro brewer, wine maker, small wine maker, distiller, small distiller, brandy manufacturer, or mixed spirit drink manufacturer may own and operate a restaurant or allow another person to operate a restaurant as part of the on-premises tasting room on the manufacturing premises.").

175.    Sections 8.7.3(10)(b)(1)(ix) and 8.7.3(11)(b)(1)(ix) of Amendment #201 ban wineries from operating restaurants and catering off-site. They state: "No restaurants, cafes or off-site catering shall be permitted as a part of a Retail Farm Processing Facility [with outdoor seating]."

176.    Sections 8.7.3(10)(b)(1)(ix) and 8.7.3(11)(b)(1)(ix) conflict with, and are preempted by, Mich. Comp. Laws § 436.1547(3) and Mich. Comp. Laws § 436.1536(7)(h).

177.    The Michigan Liquor Control Code allows on-premises licensees like wineries to allow the "performance or playing of an orchestra, piano or other types of musical instruments, or singing" and to "publicly broadcast television transmission from a federally licensed station" without the need to obtain an entertainment permit from the Michigan Liquor Control Commission.   *See* Mich. Comp. Laws § 436.1916(11).

178.    Section 3.2 defines "Entertainment" to include only "monologues, dialogues, motion pictures, still slides, closed circuit television, contests, or other performances for public viewing by issuance of an entertainment permit by the Michigan Liquor Control Commission" and such entertainment must be conducted "entirely indoors" and "only during Township-approved hours of operation."

179.    Section 3.2 definition of "Entertainment" conflicts with, and is preempted by, Mich. Comp. Laws § 436.1916(11).

180.    The Michigan Liquor Control Code allows for the Michigan Liquor Control Commission to issue an on-premises licensee an outdoor service area without the prior approval of a local government.  The only requirement for an outdoor service area is that is "well-defined and clearly marked."  *See* Mich. Admin. Code R 436.1419(2).  Such a permit "Allows an on-premises licensee to sell and serve alcohol in a well-defined and clearly marked area adjacent to the licensed premises."  (***See* Exhibit 34: Description of Michigan Liquor Licenses**).

181.    Various provisions of Amendment #201 restrict the service of alcohol and entertainment to occur only indoors.  *See, e.g.*, Section 8.7.3(10)(b)(1)(i), (iii), (v) and Section 8.7.3(11)(b)(1)(i), (v).  Further, Amendment #201 prohibits an outdoor service area for two types of wineries and only allows outdoor service for a winery with more than sixty acres and then that outdoor service area is limited to 750 square feet.  *See* Section 8.7.3(11)(b)(7)(i).

182.    Sections    8.7.3(10)(b)(1)(i),    8.7.3(10)(b)(1)(iii),    8.7.3(10)(b)(1)(v), 8.7.3(11)(b)(1)(i), and 8.7.3(11)(b)(1)(v) conflict with, and are preempted by, Mich. Admin. Code R 436.1419(2).

183.    To the extent Amendment #201 seeks to regulate the service of food and beverages, it conflict with the Michigan Food Law, which is incorporated into the Michigan Liquor Control

Code, which states that "A county, city, village, or township shall not regulate those aspects of food service establishments that are subject to regulation under this act except to the extent necessary to carry out the responsibility of a local health department to implement licensing provisions of chapter IV. This chapter does not relieve the applicant for a license or a licensee from responsibility for securing a local permit or complying with applicable local codes, regulations, or ordinances not in conflict with this act."  Mich. Comp. Laws § 289.3113.

WHEREFORE, Family Orchards requests that the Court enter an order (1) declaring Sections    6.7.2(19)(b)(2)(i),    8.7.3(10)(b)(1)(i),    8.7.3(10)(b)(1)(iii),    8.7.3(10)(b)(1)(v) 8.7.3(10)(b)(1)(vi),  8.7.3(10)(b)(1)(ix),  8.7.3(10)(b)(2),  8.7.3(11)(b)(1)(i),  8.7.3(11)(b)(1)(vi), 8.7.3(11)(b)(1)(v), 8.7.3(11)(b)(1)(ix), 8.7.3(11)(b)(2), and 8.7.3(11)(b)(7)(i) of Amendment #201 as preempted by Michigan law and therefore unlawful and unenforceable; (2) awarding Family Orchards its damages incurred as well its attorney's fees and costs under 42 U.S.C. § 1988; and (3) awarding Family Orchards any other relief the Court deems necessary and appropriate.

### COUNT IV – PREEMPTION UNDER MICHIGAN RIGHT TO FARM ACT

184.    Plaintiff incorporates the preceding paragraphs as though fully restated herein.

185.    Family Orchards brings this claim in the alternative in the event this Court concludes that Amendment #201 is effective such that Family Orchards must apply under it.

186.    The Michigan Right to Farm Act ("RTFA"), Mich. Comp. Laws § 286.471 *et seq.*, protects "farm operations" that follow the generally accepted agricultural and management practices ("GAAMPs") published by the Michigan Commission of Agriculture.  A copy of the 2023 GAAMPs is attached as **Exhibit 35**.

187.    "Farm markets" are considered "farm operations" under the GAAMPs.

188.    The GAAMPs define a "farm market" a "a year-round or seasonal location where transactions and marketing activities between farm market operators and customers take place. A

31

farm market may be a physical structure such as a building or tent, or simply an area where a transaction between a customer and a farmer is made. The farm market does not have to be a physical structure. The farm market must be located on property owned or controlled (e.g., leased) by the producer of the products offered for sale at the market. Fresh products as well as processed products may be sold at the farm market. At least 50 percent of the products offered must be produced on and by the affiliated farm measured by retail floor space during peak production season, or 50 percent of the average gross sales for up to the previous five years or as outlined in a business plan. Processed products will be considered as produced on and by the farm if at least 50 percent of the product's primary or namesake ingredient was produced on and by the farm, such as apples used in apple pie, maple sap in maple syrup, strawberries in strawberry jam, etc."

189.    The Wholesale Farm Processing Facility, Retail Farm Processing Facility – With Indoor Sales, and Retail Farm Processing Facility – With Indoor Sales and Outdoor Searing Area, as created by Amendment #201, qualify as "farm markets" under the GAAMPs.

190.    The RTFA expressly preempts local zoning ordinances that conflict with the RTFA and the GAAMPs.  Mich. Comp. Laws § 286.474(6) ("Beginning June 1, 2000, except as otherwise provided in this section, it is the express legislative intent that this act preempt any local ordinance, regulation, or resolution that purports to extend or revise in any manner the provisions of this act or generally accepted agricultural and management practices developed under this act. Except as otherwise provided in this section, a local unit of government shall not enact, maintain, or enforce an ordinance, regulation, or resolution that conflicts in any manner with this act or generally accepted agricultural and management practices developed under this act.").

191.    The GAAMPs define "processing" as "A farm product or commodity that has been converted into a product for direct sales. Processing may include, but is not limited to, packing,

washing, cleaning, grading, sorting, pitting, pressing, fermenting, distilling, packaging, cutting, cooling, storage, canning, drying, freezing, or otherwise preparing the product for sale."

192.    Amendment #201 defines "Processing" as "The alteration or change in form of Raw Produce through crushing, cooking, chemical reaction, fermentation, distillation, or other methods, but not including the picking, sorting, or handling of Raw Produce in preparation for wholesale sale in its natural state."

193.    The definition of "Processing" in Amendment #201 conflicts and is preempted by the RTFA because it is narrower than the definition of processing found in the GAAMPs.

194.    To qualify as a farm market, the GAAMPs require "[a]t least 50 percent of the products offered must be produced on and by the affiliated farm measured by retail floor space during peak production season, or 50 percent of the average gross sales for up to the previous five years or as outlined in a business plan."

195.    Sections 6.7.2(19)(a), 8.7.3(10)(a), and 8.7.3(11)(a) require that "At least sixty-five percent (65%) of the Raw Produce sold fresh or processed shall be grown on land that is exclusively operated and controlled by the specific Farm Operation that operates and controls the accessory [Wholesale Farm Processing Facility/Retail Farm Processing Facility]."

196.    Sections 6.7.2(19)(a), 8.7.3(10)(a), and 8.7.3(11)(a) conflict with, and are preempted by, the RTFA and the GAAMPs because they impose higher growth requirements than set forth in the GAAMPs and do not allow for consideration for percentage of retail floor space, as allowed by the GAAMPs.

197.    The GAAMPs state that "A new or expanding farm market that is greater than 120 square feet must meet a minimum setback of 165 feet from all non-farm residences."  (**Exhibit 35: "Location"**).

198.    Sections 6.7.2(19)(b)(4)(ii), 8.7.3(10)(b)(4)(ii), 8.7.3(11)(b)(4)(ii) and (iii) of Amendment #201 impose minimum setback requirements greater than 165 feet.

199.    Sections 6.7.2(19)(b)(4)(ii), 8.7.3(10)(b)(4)(ii), 8.7.3(11)(b)(4)(ii) and (iii) of Amendment #201 conflict with, and are preempted by, the RTFA because they impose setback requirements greater than those found in the RTFA or the GAAMPs.

200.    The GAAMPs do not contain any parcel size, building size, contiguity, or active production requirements for farm markets.

201.    Sections 6.7.2(19)(b)(3), 8.7.3(10)(b)(3), and 8.7.3(11)(b)(3) impose parcel size requirements of 40, 50, and 60 acres, respectively.  These sections also require minimum amounts of acreage to be in "Active Production" and set contiguity requirements if more than one parcel is included in the acreage calculation.

202.    Sections 6.7.2(19)(b)(5), 8.7.3(10)(b)(5), and 8.7.3(11)(b)(5) impose facility size restrictions on total floor area above finished grade, building location, underground floor area, retail sales space, and tasting room area.

203.    Sections 6.7.2(19)(b)(3), 6.7.2(19)(b)(5) 8.7.3(10)(b)(3), 8.7.3(10)(b)(5), 8.7.3(11)(b)(3), and 8.7.3(11)(b)(5) conflict with, and are preempted by, the RTFA because they impose parcel size, "Active Production," and contiguity requirements and facility size and location restrictions not found in the RTFA or the GAAMPs.  *See also Charter Twp. of Shelby v. Papesh*, 704 N.W.2d 92, 102 (Mich. Ct. App. 2005) ("The ordinance conflicts with the RTFA to the extent that it allows plaintiff to preclude a protected farm operation by limiting the size of a farm.").

204.    The GAAMPs do not set any limitations on the hours of operation of a farm market.

205.    Sections 8.7.3(10)(b)(1)(vi) and 8.7.3(11)(b)(1)(vi) of Amendment #201 state "The hours of operation for retail sales, including a Tasting Room [and approved outdoor seating],

shall be limited to an opening time no earlier than 9:00 a.m. and a closing time no later than 9:30 p.m."

206.    Sections 8.7.3(10)(b)(1)(vi) and 8.7.3(11)(b)(1)(vi) conflict with, and are preempted by, the RTFA because they hours of operation limitations not found in the RTFA or the GAAMPs.

207.    The GAAMPs allow a farm market to engage in "marketing" of its business, which includes "Promotional and educational activities at the farm market incidental to farm products with the intention of selling more farm products. These activities include, but are not limited to, farm tours (walking or motorized), demonstrations, cooking and other classes utilizing farm products, and farm-to-table dinners."

208.    The Introduction to the GAAMPs explains that "Farm markets offer farm related experiences and farm products through a variety of agritourism activities. The experience in turn promotes sale of more farm products and provides an added income stream to support the farm business, the farm family, and surrounding communities; and keeps farmland in production."

209.    Sections 8.7.3(10)(b)(1)(ix) and 8.7.3(11)(b)(1)(ix) state that "Food items not processed in the Retail Farm Processing Facility are limited to snacks that require minimal preparation such as cheese and crackers, dried fruits and nuts, and chocolates.  No restaurants, cafes or off-site catering shall be permitted as part of a Retail Farm Processing Facility."

210.    Sections 8.7.3(10)(b)(1)(v) and 8.7.3(11)(b)(1)(v) state that "Free entertainment may be provided within a retail sales/Tasting Room indoors only."

211.    Sections 8.7.3(10)(b)(1)(v), 8.7.3(10)(b)(1)(ix), and 8.7.3(11)(b)(1)(v), 8.7.3(11)(b)(1)(ix) conflict with, and are preempted by, the RTFA and the GAAMPs because they restrict the types of marketing activities and events that farm markets may host.

WHEREFORE, Family Orchards requests that the Court enter an order (1) declaring the definition of "Processing" and Sections 6.7.2(19)(a), 6.7.2(19)(b)(3), 6.7.2(19)(b)(4)(ii) 6.7.2(19)(b)(5),    8.7.3(10)(a),    8.7.3(10)(b)(1),    8.7.3(b)(1)(v),    8.7.3(10)(b)(1)(vi), 8.7.3(10)(b)(1)(ix),    8.7.3(10)(b)(4)(ii),    8.7.3(10)(b)(3),    8.7.3(10)(b)(5),    8.7.3(11)(a), 8.7.3(11)(b)(1),    8.7.3(11)(b)(1)(v),    8.7.3(11)(b)(1)(vi),    8.7.3(10)(b)(1)(ix),    8.7.3(11)(b)(3), 8.7.3(11)(b)(4)(ii), 8.7.3(11)(b)(4)(iii), and 8.7.3(11)(b)(5) of Amendment #201 as preempted by Michigan law and therefore unlawful and unenforceable; (2) awarding Family Orchards its damages incurred as well its attorney's fees and costs under 42 U.S.C. § 1988 and Mich. Comp. Laws § 286.473b; and (3) awarding Family Orchards any other relief the Court deems necessary and appropriate.

### COUNT VI – FACIAL CHALLENGE TO VIOLATION OF FREEDOM OF SPEECH, FREEDOM OF EXPRESSION AND FREE EXERCISE OF RELIGION UNDER THE FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983)

212.    Plaintiff incorporates the preceding paragraphs as though fully restated herein.

213.    Family Orchards brings this claim in the alternative in the event this Court concludes that Amendment #201 is effective such that Family Orchards must apply under it.

214.    The First Amendment to the United States Constitution prohibits the abridgement of freedom of speech.

215.    Political, religious, commercial, and artistic speech are the highest and most important forms of speech protected by the First Amendment to the United States Constitution.

216.    Charitable and political events are forms of speech protected by the First Amendment to the United States Constitution.

217.    The protections of the First Amendment have been extended through the Fourteenth Amendment to prohibit the abridgement of the freedom of speech, freedom of expression and of the free exercise of religion by state and local governments.

218.    Persons violating the First and Fourteenth Amendments under color of state law are liable under 42 U.S.C. § 1983.

219.    In enacting Amendment #201 and revoking the prior winery ordinances, Peninsula Township implicitly eliminated the abilities wineries to engage in forms of speech such as music, fundraising, political rallies, advertising, and other previously allowed forms of speech.

220.    Peninsula Township has taken the position that if its ordinances do not explicitly allow an activity, then the activity is prohibited.

221.    Amendment #201 is a content-based restriction on speech.

222.    Amendment #201 is not narrowly tailored to advance any compelling government interest.

223.    Amendment #201 is also a prior restraint on speech as even the limited "Entertainment" a winery can provide can only occur during Township approved hours.

224.    Peninsula Township has unfettered discretion in interpreting the meaning of "Entertainment" and the hours in which a winery can engage in protected speech.

225.    Even if Amendment #201 were a content-neutral restriction on speech, it would still be unconstitutionally overbroad because (i) the rationales explicitly provided for Amendment #201 do not advance a substantial government interest and (ii) Amendment #201 is not narrowly tailored to meet those rationales.

226.    Through Amendment #201, Peninsula Township is acting under color of law to deprive Plaintiffs of their constitutional rights, in violation of 42 U.S.C. § 1983.

227.    Through Amendment #201, Peninsula Township further deprives the general public of their constitutional rights to engage in protected speech and the free exercise of religion, also in violation of 42 U.S.C. § 1983.

228.    Plaintiff has suffered damages due to the unconstitutional Amendment #201.

WHEREFORE, Family Orchards requests that the Court enter an order (1) declaring Amendment #201 as unlawful and unenforceable to the extent Peninsula Township seeks to regulate or prohibit Family Orchards' protected First Amendment activity; (2) awarding Family Orchards its damages incurred as well its attorney's fees and costs under 42 U.S.C. § 1988; and (3) awarding Family Orchards any other relief the Court deems necessary and appropriate.

/s/ *Andrew J. Blodgett*
PARKER HAVEY PLC
Andrew Blodgett (P68259)
901 South Garfield Ave, Suite 200
Traverse City, MI 49686
(231)486-4537
ablodgett@parkerhavey.com